UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR BUTTE COMMUNITY BANK,<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT CHING, et al.,<br><br>    Defendants. | No. 2:13-CV-01710-KJM-EFB<br><br><br><br>ORDER |

        Robert Ching, Eugene Even, Donald Leforce, Ellis Matthews, Luther McLaughlin, Robert Morgan, James Rickards, Gary Strauss, Hubert Townshend, John Coger and Keith Robbins ("defendants") move for summary judgment against the Federal Deposit Insurance Corporation ("FDIC"), acting as receiver for Butte Community Bank ("the Bank"). Def.'s Mot. Summ. J. ("Mot.") at 1, ECF No. 19-1. The court heard argument on April 25, 2014, with Jeremy J. Gray appearing for the FDIC and Kevin D. Hughes appearing for defendants. For the reasons below, the court GRANTS IN PART and DENIES IN PART the motion.

I.    BACKGROUND

        Incorporated in California on May 11, 1990, the Bank began operations on December 14, 1990. Compl. ¶ 21, ECF No. 1. The Bank was insured under the Federal

1

Deposit Insurance Act and participated in the FDIC's Transaction Account Guarantee Program, whereby all non-interest bearing transaction accounts were fully guaranteed. *Id.* ¶ 22. At all relevant times, the Bank was a wholly owned subsidiary of California Valley Bancorp ("CVB"), a presently existing California corporation registered as a financial holding company under the Bank Holding Company Act of 1956. *Id.* ¶ 25. CVB was incorporated in July 2001 and acquired all outstanding shares of the Bank in May 2002. *Id.* ¶ 26.

The FDIC complains that "[b]efore 2007, the Bank had developed an overconcentration of lending in real estate," *id.* ¶ 30, which led to "significant deterioration in asset quality and . . . limit[ed] . . . its ability to grow in a declining market," *id.* ¶ 32. After seeking and rejecting an investment-banking firm's recommended remedy as too conservative, defendants "independently decided to engage in a large one-time 'tender offer' that would maximize the amount of cash transferred from the Bank to stockholders." *Id.* ¶¶ 33–34. "Under this plan, the Bank would raise cash by selling seven Bank buildings (which it would then immediately lease back)," and "[t]hat cash, along with other cash on hand, would then be transferred to CVB in the form of a dividend, and CVB would then distribute the cash to participating CVB stockholders in a tender offer." *Id.* ¶ 34.

The Bank closed the sale-leaseback transaction in February 2008; CVB issued a $13 million tender offer to stockholders in March 2008; and the Bank paid a dividend of $8.8 million to CVB in May 2008. *Id.* ¶ 37. Three days after receiving the dividend, CVB paid $13 million to participating stockholders. *Id.*; *see also* Pl.'s Statement of Undisputed Facts ("Pl.'s SUFs") at 3, ECF No. 26-2. Eventually, citing the Bank's inability to meet its financial obligations, the California Department of Financial Institutions ("CDFI") closed the Bank on August 20, 2010 and named the FDIC, a federal agency, as receiver. Compl. ¶ 2. At the time of closure, the Bank's administrative office was in Chico, California. *Id.* ¶ 21.

On behalf of "the Bank and of any stockholder, member, accountholder, depositor, and other creditor of the Bank," the FDIC filed suit on August 19, 2013. *Id.* ¶ 3. It brings four claims: (1) negligence under state common law; (2) gross negligence under 12 U.S.C. § 1821(k); (3) gross negligence under California Corporations Code § 309; and

(4) breach of fiduciary duties under state common law. *Id.* ¶¶ 64–94. The complaint alleges that defendants

> negligently, grossly negligently, and in breach of their fiduciary duties failed to maintain adequate capitalization of the Bank, improperly caused the Bank to transfer funds and property to its holding company, failed to direct the business and affairs of the Bank to insure safe, sound and prudent principles of banking, and caused or contributed to an unwarranted depletion of capital, all as the result of a May 2008 dividend . . . , partially funded by a sale-leaseback transaction involving seven of the Bank's branch buildings . . . that was used to repurchase 13 million shares of Bank holding company stock from the Defendants and others . . . .

*Id.* ¶ 4. It does not allege violation of California Corporations Code sections 316, 500, 501 or 506 or California Financial Code sections 1132 or 1175 (collectively "the California dividend statutes"). Pl.'s SUF at 2.

Defendants are eleven former members of the Bank's Board of Directors ("the Board"). Compl. ¶ 27. Defendants Coger and Robbins were both members of the Board and officers of the Bank. *Id.* ¶ 28. At all relevant times, the Board also served as the Board of Directors of CVB. *Id.* ¶ 29. Defendants Coger and Robbins were also officers of CVB. *Id.*

The court held an initial scheduling conference on January 23, 2014. Status (Pretrial Scheduling) Order at 1, ECF No. 13. At the conference, defendants represented they would seek summary judgment "on the legal issue of whether California's bank dividend statutes preclude plaintiff from bringing its common law cause of action against defendants for bank dividend liability." *Id.* at 2–4. On that basis, the court stayed discovery for ninety days and ordered the instant motion to be heard by April 25, 2014. *Id.* The court considers only the legal issues presented in the motion.

II.     STANDARD

Summary judgment is proper "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Material" facts are those that "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986), and an "issue of fact [is] . . . 'genuine'" where established by the presence or absence of "specific facts," not mere

1  "metaphysical doubt," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586
2  (1986). A moving party is entitled to judgment as a matter of law "[w]here the record taken as
3  a whole could not lead a rational trier of fact to find for the non-moving party . . . ." *Id.* at 587
4  (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)); *accord* FED. R.
5  CIV. P. 50(a) ("If a party has been fully heard on an issue . . . and the court finds that a
6  reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that
7  issue, the court may . . . grant a motion for judgment as a matter of law . . . .").

8          The moving party bears the initial burden of showing the "that there is an
9  absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477
10 U.S. 317, 325 (1986). If the moving party successfully does so, the burden shifts to the
11 nonmoving party, who "must establish that there is a genuine issue of material fact . . . ."
12 *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. In carrying their burdens, both parties must
13 "cit[e] to particular parts of materials in the record . . . or show . . . that the materials cited do
14 not establish the absence or presence of a genuine dispute, or that an adverse party cannot
15 produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The court views all
16 evidence and draws all inferences therefrom in the light most favorable to the nonmoving party.
17 *Matsushita Elec. Indus. Co.*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th
18 Cir. 2008).

19     III.    ANALYSIS

20         Defendants argue the FDIC's common law claims for negligence and breach of
21 fiduciary duty are preempted by the California dividend statutes, which establish "a
22 comprehensive framework . . . that govern[s] the precise civil claims asserted" and with which
23 the dividend complied. Mot. at 1. As to the statutory claims, defendants contend that the
24 federal claim may not be maintained for lack of standing, *id.*, and that the state claim "is not a
25 valid cause of action" because the statute on which the claim is premised "codifies [only a
26 legal] defense," *id.* at 18–19 (emphasis omitted).

27         The FDIC responds that the California dividend statutes "establish[] a minimum
28 threshold" but do not "prohibit any stricter duty established by law or contract . . . [or] supplant

4

a director's obligation to always act in the best interest of the corporation or excuse a director from liability for failing to do so." Pl.'s Opp'n to Mot. ("Opp'n") at 1, ECF No. 26. Additionally, it insists "Defendants' assertion that the FDIC[] . . . lacks standing . . . is simply wrong" because "the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 . . . enables the FDIC to stand in the shoes of a failed bank[] and its . . . creditors . . . ." *Id.* at 10. Lastly, it argues the state statutory claim "survives because . . . Section 309 imposes a duty on the Directors." *Id.* at 20.

### A. State Common Law Claims: Negligence & Breach of Fiduciary Duty

Defendants first argue the FDIC's two common law claims, negligence and breach of fiduciary duties, are preempted by the California dividend statutes, which, they insist, "were enacted as part of [a] . . . 'comprehensive statutory revision.'" Mot. at 12 (quoting *Pacific Scene, Inc. v. Penasquitos, Inc.*, 46 Cal. 3d 407, 411 (1988)). Although they cite no authority finding preemption in a situation such as that presented in this case, defendants rely on *Pacific Scene, Inc. v. Penasquitos, Inc.*, which they say presents "a preemption question under analogous circumstances." 46 Cal. 3d at 411. They also argue the dividend met the standards set forth in the preemptive statutes and summary judgment is thus proper. Mot. at 8–10.

The FDIC opposes summary judgment on the grounds the common law claims are not preempted. Opp'n at 1. It instead argues the allegedly preemptive statutes "establish[ only] a minimum threshold for any distribution by a bank" and do not "prohibit any stricter duty established by law or contract, . . . [or] supplant a director's obligation to always act in the best interest of the corporation or excuse a director from liability from doing so." *Id.* (emphasis omitted).

"Although . . . defendants are directors of a federally-insured . . . bank," all claims are governed "by California state law." *FDIC v. Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999); *accord Atherton v. FDIC*, 519 U.S. 213, 218 (1997). In California, "[t]he general rule is that statutes do not supplant the common law unless it appears that the Legislature intended to cover the entire subject, or in other words, to 'occupy the field.'" *I.E. Assocs. v.*

*Safeco Title Ins. Co.*, 39 Cal. 3d 281, 285 (1985). "[G]eneral and comprehensive legislation, where course of conduct, parties, things affected, limitations and exceptions are minutely described, indicates a legislative intent that the statute should totally superseded and replace the common law dealing with the subject matter." *Id.* (internal quotation marks omitted).

By way of example, defendants cite *Pacific Scene*, 46 Cal. 3d at 407. Mot. at 12. There, the California Supreme Court addressed "whether an action under the equitable 'trust fund' theory [could] be maintained against former shareholders of a dissolved corporation" and, analyzing sections of the Corporations Code not at issue here, "conclude[d] that the Legislature ha[d] generally occupied the field with respect to the remedies available to the former shareholders of dissolved corporations, thus preempting antecedent common law causes of action." *Pacific Scene*, 46 Cal. 3d at 409–10. In *Penasquitos, Inc. v. Superior Court*, 53 Cal. 3d 1180, 1193 (1991), however, the same court "limited *Pacific Scene*'s holding to the specific question of when a creditor can sue the former shareholders of a dissolved corporation." *In re Houng*, 499 B.R. 751, 767 (C.D. Cal. 2013) (citing *Penasquitos*, 53 Cal. 3d at 1193). Thus, *Pacific Scene* " is not controlling on [other] issue[s]" and does not directly control here. *Penasquitos*, 53 Cal. 3d at 1193.

Nonetheless, the court finds the common-law claims to be preempted. The California Corporations Code provides that:

> (a) A director shall perform the duties of a director . . . in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.
>
> . . . .
>
> (c) A person who performs the duties of a director in accordance with subdivisions (a) and (b)[1] shall have no liability upon any alleged failure to discharge the person's obligations as a director.

---

[1] Subsection (b) codifies California's business judgment rule, which permits a director "to rely on information, opinions, reports or statements . . . prepared or presented by" certain persons under specified circumstances. CAL. CORP. CODE § 309(b)(1)–(3).

CAL. CORP. CODE § 309(a), (c).  "The purpose of this section is to establish a standard by which the performance of a director in the exercise of his duties shall be judged," *id.* legislative committee comments (1975), and "preclud[e] further liability," *Smith v. Superior Court*, 217 Cal. App. 3d 950, 953 (1990).  Subsection (a) "provides a standard of care applicable to directors," "referenc[ing] . . . [the] 'ordinarily prudent person' and "emphasiz[ing] long traditions of the common law," while subsection (c) "relieve[s] a person from any liability by reason of being or having been a director of the corporation, if that person exercised his duties in the manner contemplated by this section."  *Id.*; *Lehman v. Superior Court*, 145 Cal. App. 4th 109, 120 (2006) ("The statute dictates *how* a director's duties . . . are to be performed if liability is not to attach." (emphasis in original)).  The statute thus codifies preexisting common-law liability, *Smith*, 217 Cal. App. 3d at 953; *see also Lehman*, 145 Cal. App. 4th at 113, and "conveys the Legislature's intent that any action by a beneficiary of a fiduciary relationship must necessarily flow from the statute," *Smith*, 217 Cal. App. 3d at 953.

Elsewhere in the code, the legislature has also delineated the duties of directors to fiduciaries when making a distribution, CAL. CORP. CODE §§ 316, 500–503, 506; CAL. FIN. CODE § 1132, and the duties of directors to creditors, *see* CAL. CORP. CODE §§ 316, 500–503, 506; CAL. FIN. CODE § 1132; *see also In re Jacks*, 243 B.R. 385, 392–93 (C.D. Cal. 1999) (holding duties of directors to creditors under sections 500 and 501 of Corporations Code are exclusive and preempt common law duties).  Common-law claims for a director's negligent breach of fiduciary duty are, therefore, preempted by statute and must be brought under the applicable statute.

The court GRANTS summary judgment on the first and fourth claims.

B. Violation of 12 U.S.C. § 1821(k)

Defendants next argue the FDIC's claim under 12 U.S.C. § 1821(k) fails as a matter of law because: (1) "the FDIC[] fails even to *allege* a violation of the governing Dividend Statutes"; (2) "the FDIC[] fails to bring its claim on behalf of a 'person entitled to sue' under the Dividend Statutes"; and (3) "Defendants fully complied with the standard of conduct established by the Dividend Statutes."  Mot. at 20 (emphasis in original).  Without

7

responding directly to defendants' contentions, the FDIC argues "the [federal statutory] claim coexists with the common law claim for negligence under California law, which imposes a stricter standard upon the Directors' conduct . . . ." Opp'n at 20.

Section 1821(k) provides:

> A director or officer of an insured depository may be held personally liable for monetary damages in any civil action by . . . the [FDIC] . . . for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) . . . as . . . defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the [FDIC] under other applicable law.

12 U.S.C. § 1821(k). Under this statute, "state law sets the standard of conduct [for holding a director or officer personally liable] as long as the state standard (such as simple negligence) is stricter than that of the federal statute." *Atherton*, 519 U.S. at 216. Where "state standards are more relaxed" than that articulated in section 1821(k), "[t]he federal statute sets a 'gross negligence' floor . . . ." *Id.* "Section 1821(k) preempts . . . state laws to the extent that they insulate officers and directors from liability for gross negligence, because such laws directly conflict with its grant of authority." *FDIC v. McSweeney*, 976 F.2d 532, 539–40 (9th Cir. 1992).

In California, section 309 of the Corporations Code "codif[ies] . . . the [common law] 'ordinarily prudent person' standard," *Lehman*, 145 Cal. App. 4th at 120, as "the standard of care under which a director must perform [his or] her duties," *Castetter*, 184 F.3d at 1044. "Because the simple negligence standard is stricter than the gross negligence standard provided for in 12 U.S.C. § 1821(k) and because the immunity defense [under the business judgment rule also codified in section 309] does not implicate the 'floor' of gross negligence . . . , California law is the applicable standard for assessing liability . . . ." *Id.* at 1043–44.

The FDIC's claim under section 1821(k) is thus analyzed under the same standard as its claim under section 309. *See id.* However, while claims may be "measured by an identical standard, this does not necessarily imply that [they] are duplicative of one another." *Profoot, Inc. v. M.S.D. Consumer Care, Inc.*, Civ. No. 11-7079, 2012 WL 1231984, at *4

8

(D.N.J. Apr. 12, 2012). Further, even where claims are potentially duplicative, the Federal Rules of Civil Procedure permit a party to "set out [two] or more statements of a claim . . . alternatively . . . , either in a single count . . . or in separate ones." FED. R. CIV. P. 8(d)(2). The claim may thus proceed. *Id.*; *cf. R.R. v. Oakland Unified Sch. Dist.*, No. CV 13-05069-KAW, 2014 WL 830222, at *4 n.2 (N.D. Cal. Feb. 28, 2014) (declining to "exercise . . . discretion in striking potentially duplicative" claims). *But cf. Black & Veatch v. Modesto Irrigation Dist.*, No. CV F 11-0695 LJO SKO, 2011 WL 2636218, at *5 n.1 (E.D. Cal. July 5, 2011) (dictum) ("Duplicative claims may support a [Federal] Rule [of Civil Procedure] 12(f) motion" where they "constitute[] needless repetition of other averments or . . . are foreign to the issue to be decided.").

The court DENIES summary judgment of the FDIC's second claim.

### C. Violation of California Corporations Code Section 309

Finally, defendants, without citing authority, argue California Corporations Code section 309 "does not establish a right of action" because it "merely codifies California's 'business judgment rule' defense." Mot. at 18–19. From this, they conclude "[t]his is not a valid cause of action," and summary judgment is warranted. *Id.* at 18. In similarly conclusory fashion, the FDIC contends the claim "survives because, contrary to Defendants' assertion that it is only an affirmative defense, Section 309 imposes a duty on the Directors." Opp'n at 20.

Already quoted, section 309 states:

> A director shall perform the duties of a director . . . in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.

CAL. CORP. CODE § 309(a). The statute "does not set forth any duties of a director, fiduciary or otherwise" or "give rise to a liability 'created by law'" or "any *new* liability." *Lehman*, 145 Cal. App. 4th at 120 (emphasis in original). However, it does "codif[y] common law principles," *id.*; *accord Castetter*, 184 F.3d at 1044, including "the standard of care under which a director must perform [his or] her duties," *Castetter*, 184 F.3d at 1044. Thus, despite also "protect[ing] a director from liability for 'a mistake in business judgment'" *id.* (citation

9

omitted), the statute, as already noted, provides a statutory basis for preexisting common-law liability, *Lehman*, 145 Cal. App. 4th at 121; *see also Smith*, 217 Cal. App. 3d at 953–54. Accordingly, a claim for violation of section 309 is viable and may proceed. *Smith*, 217 Cal. App. 3d at 953–54.

The court DENIES summary judgment of the FDIC's third claim.

IV.   CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment as follows:

(1)   Summary judgment is GRANTED as to the first claim.
(2)   Summary judgment is DENIED as to the second claim.
(3)   Summary judgment is DENIED as to the third claim.
(4)   Summary judgment is GRANTED as to the fourth claim.

To the extent the parties have not resumed discovery, the temporary stay on discovery is lifted and the discovery period is reopened.

IT IS SO ORDERED.

DATED: July 8, 2014.

_____
UNITED STATES DISTRICT JUDGE