1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FEDERAL DEPOSIT INSURANCE              No.  2:13-cv-01710-KJM-EFB
     CORPORATION AS RECEIVER FOR
12   BUTTE COMMUNITY BANK,

13                   Plaintiff,             ORDER

14            v.

15   ROBERT CHING, EUGENE EVEN,
     DONALD LEFORCE, ELLIS
16   MATTHEWS, LUTHER McLAUGHLIN,
     ROBERT MORGAN, JAMES
17   RICKARDS, GARY STRAUSS, HUBERT
     TOWNSHEND, JOHN COGER AND
18   KEITH ROBBINS,

19                   Defendants.

20

21

22            Defendants Robert Ching, Eugene Even, Donald Leforce, Ellis Matthews, Luther

23   McLaughlin, Robert Morgan, James Rickards, Gary Strauss, Hubert Townsend, John Coger, and

24   Keith Robbins are the former directors of Butte Community Bank (the Bank) and move for

25   summary judgment against plaintiff Federal Deposit Insurance Corporation (FDIC), acting as

26   receiver for the Bank.  The matter was submitted without a hearing.  For the reasons below, the

27   court denies the motion.

28

                                              1

1    I.        BACKGROUND

2              A.        Allegations

3              The Bank was incorporated in California on May 11, 1990, and began operations

4    on December 14, 1990.  Compl. ¶ 21, ECF No. 1.[1]  The Bank was insured under the Federal

5    Deposit Insurance Act and participated in the FDIC's Transaction Account Guarantee Program,

6    whereby all non-interest bearing transaction accounts were fully guaranteed.  *Id.* ¶ 22.  At all

7    relevant times, the Bank was a wholly owned subsidiary of California Valley Bancorp (CVB), a

8    presently existing California corporation registered under the Bank Holding Company Act of

9    1956 as a financial holding company.  *Id.* ¶ 25.  CVB was incorporated in July 2001 and acquired

10   all the Bank's outstanding shares in May 2002.  *Id.* ¶ 26.  The defendants are eleven former

11   members of the Bank's Board of Directors.  *Id.* ¶ 27.  Defendants Coger and Robbins were both

12   members of the Board and officers of the Bank.  *Id.* ¶ 28.  At all relevant times, the directors

13   comprised both the Bank's board and CVB's board and were also CVB shareholders.  *Id.* ¶¶ 29,

14   40.  Defendants Coger and Robbins were also officers of CVB.  *Id.* ¶ 29.

15             The FDIC complains that "[b]efore 2007, the Bank had developed an

16   overconcentration of lending in real estate," *id.* ¶ 30, which led to "significant deterioration in

17   asset quality and . . . limit[ed] . . . its ability to grow in a declining market."  *Id.* ¶ 32.  After

18   seeking and rejecting an investment banking firm's recommended remedy as too conservative,

19   defendants "independently decided to engage in a large one-time 'tender offer' that would

20   maximize the amount of cash transferred from the Bank to stockholders."  *Id.* ¶¶ 33–34.  "Under

21   this plan, the Bank would raise cash by selling seven Bank buildings (which it would then

22   immediately lease back)," and "[t]hat cash, along with other cash on hand, would then be

23   transferred to CVB in the form of a dividend, and CVB would then distribute the cash to the

24   participating CVB stockholders in the form of a tender offer."  *Id.* ¶ 34.

25   _____

26        [1] Discovery remains in its early stages.  The directors' motion concerns a "purely legal
     issue," and does not contest the FDIC's allegations.  Reply 1, ECF No. 66.  The court therefore
27   concludes the complaint's factual allegations remain undisputed and considers here, as in its
     previous order, only legal issues.  Order July 8, 2014 (Prev. Order), at 3, ECF No. 40.
28

1    In February 2008, the Bank closed the sale-leaseback transaction, and the next

2    month, CVB issued a $13 million tender offer to stockholders.  *Id.* ¶ 37.  In May 2008, the Bank

3    paid a dividend of $8.8 million to CVB.  *Id.*  Three days after receiving the dividend, CVB paid

4    $13 million to participating stockholders, including about $3.7 million to the directors.  *Id.* ¶¶ 37,

5    40.  In late 2008, the Bank applied for $10 million under Troubled Asset Relief Program (TARP).

6    Coger Dep. at 51–54.[2]  On August 20, 2010, the California Department of Financial Institutions

7    closed the Bank and named the FDIC as receiver.  Compl. ¶ 2.  The FDIC sued on August 19,

8    2013.  Compl. at 31.

9         B.    Summary Judgment

10        This is the directors' second motion for summary judgment.  They first moved for

11   summary judgment on March 27, 2014, claiming (1) several California statutes (the "bank

12   dividend statutes") preempted the FDIC's common law claims for negligence and breaches of

13   fiduciary duty; (2) the FDIC lacked standing to sue under 12 U.S.C. § 1821(k); and (3) California

14   Corporations Code section 309 did not give rise to an independent right of action.  Def.'s First

15   Mot. Summ. J., ECF No. 19.  On July 8, 2014, the court issued an order granting in part and

16   denying in part that first motion.  Prev. Order at 10.  The court denied summary judgment on the

17   second and third claims, brought under 12 U.S.C. § 1821(k) and Corporations Code section 309.

18   *Id.*  The court held that section 309 set forth the applicable standard of care and the FDIC had

19   stated claims for negligence under both section 1821(k) and section 309, even though the

20   complaint did not allege a violation of the state law "dividend statutes."  *Id.* at 3, 6–10.  The court

21   granted summary judgment on the common law claims for negligence and breach of fiduciary

22   duties.  *Id.* at 10.

23        On December 29, 2014, the directors filed a second motion for summary

24   judgment.  Mot. Summ. J., ECF No. 45.  They argue as follows: First, California Corporations

25        [2] The FDIC cited this deposition testimony in opposition to the directors' motion and

26   proposed the testimony as establishing an undisputed fact.  Pl.'s Statement Undisputed Material
     Facts at 14, ECF No. 58-1.  Although the directors objected to other citations of this deposition,

27   they did not dispute the fact in reply.  The court therefore finds it is undisputed for purposes of
     this motion.

28

3

1   Code section 309 does not control the FDIC's claims, because several other sections of the

2   Corporations Code are more specific and relevant,[3] and under California rules of statutory

3   construction, these other sections must provide the rule of decision here.  Mem. Summ. J. at 4–7.

4   They refer to these statutes again as the "bank dividend statutes."  *Id.* at 1.  Second, they argue

5   that these bank dividend statutes incorporate section 309 by reference and render it subordinate.

6   *Id.* at 7–9.  Third, they argue the FDIC lacks standing to bring any dividend claim under the bank

7   dividend statutes, section 309, or section 1821(k).  *Id.* at 9–16.

8         The FDIC contends the motion is a request for reconsideration in disguise and

9   opposes its substance.  Opp'n at 6, ECF No. 58.  In reply the directors insist their motion is one

10  for summary judgment, not reconsideration.  Reply at 2, ECF No. 66.  The court took the matter

11  under submission on March 9, 2015, Minute Order, ECF No. 69, but allowed limited

12  supplemental briefing on March 16, 2015 to address the FDIC's standing under sections 309 and

13  1821(k), Order, ECF No. 73.  The parties each submitted a supplemental brief.  *See* Suppl. Brief,

14  ECF No. 79; Suppl. Reply, ECF No. 80.

15  II.      LEGAL STANDARD

16        A court must grant a motion for summary judgment "if . . . there is no genuine

17  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

18  Civ. P. 56(a).  This is a "threshold inquiry" into whether a trial is necessary at all, that is, whether

19  "any genuine factual issues . . . properly can be resolved only by a finder of fact because they

20  may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

21  242, 250 (1986).[4]  The court must draw all inferences and view all evidence in the light most

22  favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

23  574, 587–88 (1986); *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record

24        [3] The motion cites California Corporations Code sections 316, 501, 506, 1132 and 1175.
25  Mem. Summ. J. 4–5.

26        [4] Rule 56 was amended, effective December 1, 2010; however, it is appropriate to rely on
    cases decided before the amendment took effect, as "[t]he standard for granting summary
27  judgment remains unchanged."  Fed. R. Civ. P. 56, notes of advisory comm. on 2010
    amendments.
28

4

1    taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

2    'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v.*

3    *Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

4            The moving party bears the initial burden of "informing the district court of the

5    basis for its motion, and identifying those portions of the [record] which it believes demonstrate

6    the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

7    (1986).  The burden then shifts to the nonmoving party to "go beyond the pleadings" and

8    "designate specific facts" in the record to show a trial is necessary to resolve genuine disputes of

9    material fact.  *Id.* at 324 (quotation marks and citation omitted).

10    III.    ANALYSIS

11            "Standing is the threshold issue of any federal action," *Employers-Teamsters*

12    *Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 923 (9th

13    Cir. 2007), and functions as a limitation on the court's judicial power, *see Valley Forge Christian*

14    *College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982).

15    Federal courts "bear an . . . obligation to assure [themselves] that jurisdiction is proper before

16    proceeding to the merits."  *Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S.

17    316, 324 (2008).

18            The court begins by addressing the directors' claim that the FDIC lacks standing to

19    pursue its claims under section 309 and 1821(k).  Finding the FDIC does have standing, the court

20    then turns to the substantive viability of the FDIC's claims *vel non*.

21        A.    Standing

22            1.    Article III Standing

23            Article III standing requires a plaintiff to satisfy three requirements: (1) the

24    plaintiff must suffer a concrete and particularized "injury in fact;" (2) the injury and conduct

25    complained of must be causally connected, and the injury must be traceable to the defendant's

26    challenged actions; and (3) the injury must be "likely" to be resolved by resolution favorable to

27

28

1   the plaintiff.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  At this initial stage of

2   litigation, it is enough for the FDIC to allege and not prove these three elements.  *See id.* at 561.[5]

3                                        a)      Injury in Fact

4             An injury in fact is a concrete and particularized invasion of a legally protected

5   interest.  *Id.* at 560.  "[T]he party seeking review" must be "among the injured."  *Id.* at 563

6   (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1979)).  Because all rights of the Bank

7   and other stakeholders are vested in the FDIC as receiver, injury to any of them constitutes injury

8   to the FDIC.  *See* 12 U.S.C. § 1821(d)(2)(A); *Pareto v. FDIC*, 139 F.3d 696, 700 (9th Cir. 1998).

9             Here, the FDIC has alleged its injury in fact.  The complaint claims the directors

10  caused the Bank to sell seven of its buildings, assets of concrete value, then issued a special

11  dividend to the Bank's sole stockholder, CVB, of which the directors are also all stockholders.

12  The FDIC alleges the directors used their authority as directors of both the Bank and CVB to

13  structure a series of transactions that allowed them to partially cash out their investment, and

14  thereby damaged the Bank and its stakeholders.  The Bank lost needed capital, and six months

15  later applied for relief under the Troubled Asset Relief Program (TARP).  Eventually, the Bank

16  closed, and the FDIC was appointed as receiver.

17            The conclusion that the FDIC satisfies the injury-in-fact requirement stands

18  despite defendants' argument that "it would be manifestly unreasonable to contend . . . the Bank

19  was . . . 'damaged' by a [d]ividend paid to its consenting stockholder."  Mem. Summ. J. at 10.  In

20  other circumstances, under California law, which applies here because the Bank was a California

21  corporation,[6] shareholder approval may inoculate a director from liability.  *See, e.g.*, *Armstrong*

22  *Manors v. Burris*, 193 Cal. App. 2d 447, 455 (1961) ("Where the whole of the balance of the

23

24            [5] As noted above, *see supra* note 1, the directors do not challenge the factual basis of the
    FDIC's claims, so the court assumes their truth and does not require the FDIC to support its
25  jurisdictional allegations with affidavits or other evidence, as it would ordinarily.  *See Lujan*, 504
    U.S. at 561.

26
            [6] *See also F.D.I.C. v. Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999) (California law
27  determines liability of federally-insured bank directors in a suit by FDIC as receiver under section
    12 U.S.C. § 1821(k)).

28

                                                  6

1    shares of the corporation are held by stockholders having full knowledge of and giving full

2    consent to the transaction, the sale is neither void nor voidable.").  This is not the case when, as

3    here, the plaintiff alleges self-interest, improper motives, and that the directors sat on both sides

4    of the transactions in question; at a fundamental level, California law does not "allow[] corporate

5    directors to suck money out of a corporation and siphon it on to themselves or entities they

6    control."  *Kruss v. Booth*, 185 Cal. App. 4th 699, 714 (2010).  Neither does the business judgment

7    rule shield directors "in circumstances which inherently raise an inference of conflict of interest."

8    *Id.* at 728 (quoting *Everest Investors 8 v. McNeil Partners*, 114 Cal. App. 4th 411, 430 (2003)

9    (emphasis omitted)).  *See also In re Intelligent Direct Mktg.*, 518 B.R. 579, 589 (E.D. Cal. 2014)

10   (finding the sole shareholder, sole director, and CEO of a corporation was liable under California

11   Law when he caused the corporation to make distributions to himself); *Mueller v. Macban*,

12   62 Cal. App. 3d 258, 277 (1976) ("[D]ealings between the corporation and a director or a

13   dominant or controlling stockholder, or group of stockholders, are subject to strict scrutiny and

14   when challenged the duty is on the director or holder to prove both the good faith of the

15   transaction and its inherent fairness from the viewpoint of the corporation and those interested

16   therein.").  The FDIC has alleged sufficient injury in fact.

17                    b)        Causal Connection and Redressability

18                    The FDIC as plaintiff also must establish a connection "between the injury and the

19   conduct complained of," meaning "the injury has to be 'fairly . . .  trace[able] to the challenged

20   action of defendant, and not . . . th[e] result [of] the independent action of some third party not

21   before the court.'"  *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rights*

22   *Organization*, 426 U.S. 26, 41–42 (1976)) (alterations in *Lujan*).

23                    Here, the FDIC alleges the directors' conduct caused the injuries described above.

24   The defendants allegedly used their dual status as directors of CVB and the Bank to initiate a

25   series of self-serving transactions that removed crucial assets from the Bank's control.  Pl.'s

26   Supp. Br., ECF 79 at 4–7; Compl. ¶¶ 71-84.  These transactions allegedly reduced the Bank's

27   ability to respond to financial distress, prevented it from meeting its financial obligations, and

28   eventually led to its failure.  *Id.*  This is sufficient for purposes of standing, where causation may

1    be quite indirect, provided the injury alleged is "traceable" to the defendants' conduct. *See, e.g.*,

2    *Graham v. Deukmejian*, 713 F.2d 518, 519 (9th Cir. 1983) (finding plaintiff Jehovah's Witnesses

3    had standing to pursue lawsuit against California for allegedly instigating disciplinary

4    proceedings against surgeons willing to perform operations without blood transfusion, which

5    caused injury to plaintiffs because their religious beliefs prohibited blood transfusions); *Johnson*

6    *v. Stuart*, 702 F.2d 193, 196 (9th Cir. 1983) (standing requires no "but-for test"); *see also Pareto*,

7    139 F.3d at 700 (finding FDIC, not an individual shareholder, could as receiver pursue

8    shareholder derivative claim against bank directors).  The FDIC has alleged a sufficient causal

9    connection.

10                             c)       Redressability

11           Redressability is often considered an arm of causation.  *See, e.g.*, *Duke Power Co.*

12   *v. Carolina Envt'l Study Grp., Inc.*, 438 U.S. 59, 74 (1978) (equating the requirement that an

13   injury "fairly can be traced to the challenged action of the defendant" with the requirement "that

14   the exercise of the Court's remedial powers would redress the claimed injuries." (quotation marks

15   and citation omitted)); *see also* Charles A. Wright et al., Federal Practice & Procedure § 3531.5

16   (3d ed.) ("It would be possible to reduce these three requirements to injury and remedial benefit,

17   observing that injury is relevant—and remedial benefit will follow—only if the injury has been

18   caused by the challenged acts.").  This case is an example of why this is true: the FDIC requests

19   damages from the defendants so it may essentially reverse the causal chain described above; by

20   moving money from the defendants back to the Bank and other interested parties, the costs of the

21   Bank's failure may be remediated.  This resolution is sufficiently "likely" to redress its injuries.

22   *See Lujan*, 504 U.S. at 560–61 (citing *Simon*, 426 U.S. at 38, 43); *see also, e.g.*, *Jewel v. Nat'l*

23   *Sec. Agency*, 673 F.3d 902, 912 (9th Cir. 2011) ("There is no real question about redressability.

24   [The plaintiff] seeks an injunction and damages, either of which is an available remedy should

25   [she] prevail on the merits.").

26           The court concludes the FDIC has Article III standing.

27

28

                                              8

1    　　　　2.　　　Standing Under 12 U.S.C. § 1821

2    　　　　Under 12 U.S.C. § 1821(d)(2)(A), Congress expressly transferred all rights,

3    powers, and privileges of stockholders, depositors, and the institution itself to the FDIC as

4    receiver.[7]  This transfer of rights extends to standing to sue.  *See Pareto*, 139 F.3d at 700.

5    Furthermore, "[a] director or officer of an insured depository institution may be held personally

6    liable for monetary damages in any civil action by . . . [the FDIC], which action is prosecuted

7    wholly or partially for the benefit of the [FDIC] . . . acting as conservator or receiver of such

8    institution."  12 U.S.C. § 1821(k).  Here, because the FDIC, as receiver, succeeds the rights of the

9    Bank and stockholders and depositors, the FDIC has authority to bring civil actions for money

10   damages against the Bank's directors.  12 U.S.C. § 1821(k); *Delta Savings Bank v. United States*,

11   265 F.3d 1017, 1021 (9th Cir. 2001); *Pareto*, 139 F.3d at 700.

12   　　　　3.　　　Standing Under California Corporations Code Section 309

13   　　　　Under California Corporations Code section 309, "director[s] shall perform the

14   duties of a director . . . in good faith, in a manner such director believes to be in the best interests

15   of the corporation and its shareholders . . . ."  Cal. Corp. Code § 309(a).  Section 309 "codified

16   common law principles, in particular the business judgment rule and the ordinarily prudent person

17   standard."  *Lehman v. Superior Court*, 145 Cal. App. 4th 109, 120 (2006) (internal quotations and

18   citations omitted).  Section 309 "establishes a standard of care and accords directors immunity

19   from liability if they comply with that standard."  *Id.* (emphasis omitted).  Thus, directors have

20   fiduciary duties to the corporation and its shareholders under section 309.

21   　　　　As noted above, the FDIC as receiver succeeds to all the rights of the Bank and

22   stockholders.  12 U.S.C. § 1821(d)(2)(A).  The FDIC thus has authority to bring a claim under

23   California Corporations Code section 309.  *See Castetter*, 184 F. 3d at 1043–44; *see also* 12

24   U.S.C. § 1821(k); *Pareto*, 139 F.3d at 700 (noting had the bank not been under FDIC

25   

26   　　　　[7] "The [FDIC] shall, as conservator or receiver, and by operation of law, succeed to —
     (i) all rights, titles, powers, and privileges of the insured depository institution, and of any
27   stockholder, member, accountholder, depositor, officer, or director of such institution with respect
     to the institution and the assets of the institution. . . ."  12 U.S.C. § 1821(d)(2)(A).
28

1   receivership, former stockholder would have standing to sue for breaches of the duties of care and

2   loyalty under California Corporations Code section 309).  Because the shareholders and the

3   corporation would have standing under California law, so does the FDIC.  The FDIC has standing

4   to sue under section 309.

5           B.      Substantive Claim Under California Corporations Code 309

6                   The court previously has concluded that the FDIC's claim for a violation of section

7   309 is viable and may proceed.  Prev. Order at 10.  The defendants may not, as plaintiffs point

8   out, challenge that conclusion anew by reframing their argument as a request for statutory

9   interpretation rather than preclusion.  The two arguments are functional equivalents in this

10  context.  *Compare* Mot. Summ. J. 1, ECF No. 19 ("[T]he State of California has enacted a

11  comprehensive framework of statutes that govern the precise civil claims asserted by the FDIC-R.

12  Applying the 'statutory preemption' principles set forth by the California Supreme Court compels

13  the conclusion that the California Legislature intended to 'cover the field' of dividend liability

14  and to preempt common law tort claims such as those advanced by the FDIC-R.") *with* Mot.

15  Summ. J. 1, ECF No. 45 ("[U]nder California law, specific statutes dealing expressly with a

16  particular subject matter 'control and take priority' over general statutes.  Thus, the California

17  bank dividend statutes control the FDIC-R's bank dividend claims and take priority over the more

18  general provisions of Corporations Code [section] 309.").

19                  Nevertheless, even construed as a legally distinct request, defendants' argument

20  here is unpersuasive.  "Although the defendants are directors of a federally-insured . . . bank, their

21  liability is determined by California state law."  *Castetter*, 184 F.3d at 1043; *accord Atherton v.*

22  *FDIC*, 519 U.S. 213, 226 (1997).  California Corporations Code section 309 provides as follows:

23                          A director shall perform the duties of a director . . . in good faith, in
                            a manner such director believes to be in the best interest of the
24                          corporation and its shareholders and with such care, including
                            reasonable inquiry, as an ordinarily prudent person in a like position
25                          would use under similar circumstances.

26  Cal. Corp. Code § 309(a).  As noted above, the statute "codified common law principles,"

27  *Lehman*, 145 Cal. App. 4th at 120, and "explains the standard of care under which a director must

28  perform [his or] her duties," *Castetter*, 184 F.3d at 1044.

1    Contrary to the directors' argument in reply, a claim under section 309 is valid

2  because section 309 is harmonious with the bank dividend statutes.  In California, by well-

3  established rule of statutory construction, a later statute that specifically addresses a particular

4  subject matter supersedes earlier, more general statutes.  *Certified Emp. Council v. Monterey*

5  *Peninsula Unified Sch. Dist.*, 42 Cal. App. 3d 328, 333 (1974).  But this "rule[] do[es] not apply

6  unless the language of two statutory enactments cannot be harmonized."  *Id.*  Only an

7  irreconcilable difference warrants imposing the specific statute over the general statute.  *Pacific*

8  *Lumber Co. v. State Water Res. Control Bd.*, 37 Cal. 4th 921, 942–43 (2006); *see also* Cal. Code

9  Civ. Proc. § 1859 ("In the construction of a statute the intention of the Legislature . . . is to be

10  pursued, if possible; and when a general and particular provision are inconsistent, the latter is

11  paramount to the former.  So a particular intent will control a general one that is inconsistent with

12  it.").  Courts should reconcile any conflicting statutes if possible.  *Certified Emp. Council*, 42 Cal.

13  App. 3d at 333.

14    California Corporations Code section 316, the statute the directors argue

15  supersedes section 309 here, provides as follows in pertinent part:

16    Subject to the provisions of Section 309, directors of a corporation
     who approve any of the following corporate actions shall be jointly
17    and severally liable to the corporation for the benefit of all of the
     creditors or shareholders entitled to institute an action . . . . (1) The
18    making of any distribution to its shareholders to the extent that it is
     contrary to [sections 500–503 of the Corporate Code], inclusive.
19

20  Cal. Corp. Code § 316 (emphasis added).  "The phrase 'subject to' means 'subordinate to.'"

21  *Gapusar v. Jay*, 66 Cal. App. 4th 734, 741 (1998); *see also Swan Magnetics, Inc. v. Superior*

22  *Court*, 56 Cal. App. 4th 1504, 1510 (1997) ("The phrase 'subject to' as not synonymous with

23  'according to' or 'consistent with'; it means conditioned upon, limited by, or subordinate to.").

24  "Subordinate means inferior in order, nature, dignity, power, importance, or the like."  *Gapusar*,

25  66 Cal. App. 4th at 741 (alterations and quotation marks omitted) (quoting Black's Law

26  Dictionary 1426 (6th ed. 1990)).  Therefore, "if the legislature had made [a provision] 'subject to'

27  [another] statutory provision, the effect of the [first provision] would be controlled and limited by

28  the [other] statute."  *Swan Magnetics*, 56 Cal. App. 4th at 1511.

1    Here, the language "subject to the provisions of 309" means section 309 controls

2  and limits the effect of section 316, not the other way round.  The directors correctly point out

3  that section 309 may serve as a defense, "protect[ing] a director from liability for a 'mistake in

4  business judgment.'"  *See* Prev. Order at 9 (citing *Castetter*, 184 F.3d at 1044 (citation omitted)).

5  For example, the business judgment rule insulates directors from liability for negligence where

6  the officers relied on information or opinions from consultants or bank regulators.  Cal. Corp.

7  Code § 309; *Castetter*, 184 F.3d at 1044.  But "the statute, as already noted, provides a statutory

8  basis for preexisting common-law liability."  Prev. Order at 10 (citation omitted).  A director may

9  be negligent and therefore liable under section 309, even if she complied with the specific statutes

10  defining impermissible dividends and therefore is not liable under section 316.  The court denies

11  summary judgment on this claim.

12    C.    Gross Negligence Under 12 U.S.C. § 1821(k)

13    Under section 1821(k), a receiver has standing to pursue claims against individual

14  directors based on conduct that constitutes gross negligence or a stricter standard set out in state

15  law.  *See* 12 U.S.C. § 1821(k); *Atherton*, 519 U.S. at 227.  "As a general rule, wrongdoing by

16  bank officers that adversely affects all depositors creates liability which is an asset of the bank,

17  and only the bank or its receiver may sue for its recovery."  *Hamid v. Price Waterhouse*, 51 F.3d

18  1411, 1420 (9th Cir. 1995) (quoting *Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir. 1979)).

19  Section 1821(k) "does not stand in the way of a stricter standard that the laws of some States

20  provide."  *Atherton*, 519 U.S. at 227.  Where state standards are more relaxed than section

21  1821(k), the federal statute sets a gross negligence floor.  *Id.*  "Section 1821(k) pre-empts . . .

22  state laws to the extent that they insulate officers and directors from liability for gross negligence,

23  because such laws directly conflict with its grant of authority."  *FDIC v. McSweeney*, 976 F.2d

24  532, 539–40 (9th Cir. 1992).

25    In California, section 309 "codif[ies] . . . the [common law] 'ordinarily prudent

26  person' standard," *Lehman*, 145 Cal. App. 4th at 120, as "the standard of care under which a

27  director must perform [his or] her duties," *Castetter*, 184 F.3d at 1044.  "Because the simple

28

1  negligence standard is stricter than the gross negligence standard provided for in 12 U.S.C.

2  § 1821(k) and because the immunity defense [under the business judgment rule codified in

3  section 309] does not implicate the 'floor' of gross negligence . . . , California law is the

4  applicable standard for assessing liability" under section 1821(k).  *Id.* at 1043–44.

5           As addressed in the court's previous order, the FDIC's claims under section

6  1821(k) and section 309 may both proceed even though section 1821(k) is analyzed applying the

7  same standard applicable to section 309.  Despite being "measured by an identical standard,"

8  claims are not necessarily "duplicative of one another."  Prev. Order at 8 (quoting *Profoot, Inc. v.*

9  *M.S.D. Consumer Care, Inc.*, No. 11-7079, 2012 WL 1231984, at *4 (D.N.J. Apr. 12, 2012)).

10  The motion is denied.

11  IV.    <u>CONCLUSION</u>

12          For the foregoing reasons, the court DENIES defendants' motion for summary

13  judgment.  This order resolves ECF No. 45.

14          IT IS SO ORDERED.

15   DATED: July 24, 2015.

16

17  _____
                 UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24

25

26

27

28