1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                             EASTERN DISTRICT OF CALIFORNIA

10

11   FEDERAL DEPOSIT INSURANCE                     No. 2:13-cv-01710-KJM-EFB
     CORPORATION AS RECEIVER FOR
12   BUTTE COMMUNITY BANK,

13                  Plaintiff,                      ORDER

14          v.

15   ROBERT CHING, et al.

16                  Defendants.

17

18          On October 7, 2016, the court heard argument on the parties' motions in limine

19   filed in anticipation of the trial set to begin on October 31, 2016.  Tony Burt and Jean-Paul Cart

20   appeared for the Federal Deposit Insurance Corporation (FDIC), acting as receiver for Butte

21   Community Bank (the Bank).  Kevin Hughes appeared for defendants Robert Ching, Eugene

22   Even, Donald LeForce, Luther McLaughlin, Robert Morgan, James Richards, Gary Strauss,

23   Hubert Townsend, John Coger and Keith Robbins (collectively, defendants).  At hearing, the

24   court either issued tentative bench orders, requested additional information, or took matters under

25   submission.  The court reviews the status of each motion in limine below, confirming and

26   clarifying certain bench orders, issuing some additional orders, and clarifying what remains under

27   submission.

28
                                                  1

1    I.       NATURE OF RULINGS ON *IN LIMINE* MOTIONS

2           The court issues its rulings on motions *in limine* based on the record currently

3    before the court.  Each ruling is made without prejudice and is subject to proper renewal, in whole

4    or in part, during trial.  If a party wishes to contest a pre-trial ruling, it must do so through a

5    proper motion or objection, or otherwise forfeit appeal on such grounds.  *See* Fed. R. Evid.

6    103(a); *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 689 (9th Cir. 2001) ("Where a

7    district court makes a tentative in limine ruling excluding evidence, the exclusion of that evidence

8    may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial.")

9    (alteration, citation, and quotation omitted).

10   II.      PLAINTIFF'S MOTIONS IN LIMINE

11       **A.  Plaintiff's Motion in Limine One (ECF No. 156)**

12          Plaintiff moves to exclude argument or evidence that the "Great Recession" was a

13   subsequent cause of the Bank's losses, or was an unforeseeable event.  In their opposition, ECF

14   No. 169, defendants explain they do not intend to argue the Great Recession was a proximate

15   cause of the Bank's losses, nor do they intend to use evidence of third parties' lack of knowledge

16   of the Great Recession as direct proof that defendants themselves lacked such knowledge, but

17   they will seek to introduce evidence that, in general, the Great Recession was not reasonably

18   foreseeable in early 2008.

19          The court GRANTS this motion, with clarification.  The court excludes as

20   irrelevant any argument or evidence that the Great Recession was a subsequent proximate cause

21   of the Bank's losses.  However, if the FDIC presents evidence tending to show that defendants

22   foresaw the downturn and its impact before approving the $8.8 million dividend on May 5, 2008,

23   the FDIC will effectively "open the door" for defendants to respond by attempting to prove they

24   did not foresee the downturn when approving the dividend.  If the door is opened, the court

25   anticipates restricting any defense evidence to what defendants knew at the time they approved

26   the May 5, 2008 dividend.

27   /////

28   /////

                                              2

**B.  Plaintiff's Motion in Limine Two (ECF 157)**

Plaintiff seeks to bar defendants ultimately from introducing evidence of FDIC's sale of the Bank's deposits to Rabobank at a $19.1 million premium and then arguing FDIC therefore cannot claim damages.  Plaintiffs also seek to bar defendants from introducing evidence of or making argument based on FDIC's interference with Rabobank's earlier negotiations with the Bank regarding Rabobank's potential acquisition.   The FDIC argues the marketing, negotiation, and sale of the Bank's assets to Rabobank more than two years after the dividend at issue in this case is irrelevant and prejudicial.

The court GRANTS this motion, with clarification.  Defendants are precluded from arguing that the sale of deposits to Rabobank prevents the FDIC from seeking damages. Though the relevance of the price for which the FDIC sold the Bank's deposits is unclear, the court reserves ruling conclusively on this question pending the possibility its relevance will become more clear during trial.  Additionally, the court bars defendants from introducing evidence or argument about the FDIC's alleged interference with Rabobank's negotiations to acquire the Bank, but if the FDIC in some way opens the door to make evidence of the sale of deposits to Rabobank relevant, the court may revisit this issue.

**C.  Plaintiff's Motion in Limine Three (ECF No. 158)**

Plaintiff moves to exclude evidence or argument regarding regulatory reports of examination issued after May 5, 2008, and testimony relating to those reports by examiner Mary Viereck, as irrelevant and prejudicial.  Plaintiff wants to exclude the report in its entirety because of statements in the report by Mary Viereck that (1) the Bank's management "performed due diligence" before they made the dividend, and (2) the Bank was "well-capitalized" at the end of 2008.

At hearing, the court asked the parties for supplemental briefing on the issue of whether these statements by Ms. Viereck, acting in her capacity as examiner for the FDIC, qualify as party opponent admissions under Federal Rule of Evidence 801(d).  Once this supplemental briefing is received, the matter will be submitted.

/////

1          **D.  Plaintiff's Motion in Limine Four (ECF No. 159)**

2                   Plaintiff moves to exclude evidence or argument that plaintiff's damages are

3   reduced by (1) the alleged "sale-leaseback gain" when several of the Bank's properties were sold

4   and then leased back to the Bank, or (2) a $4 million payment that Community Valley Bancorp

5   (CVB), the Bank's holding company, made to the Bank two months after the May 5, 2008

6   dividend in an attempt to maintain the Bank's capital.

7                   The court GRANTS this motion in part.  The court has granted plaintiff's motion

8   for summary judgment on defendants' "offset" affirmative defense, deciding the above-

9   mentioned transactions cannot reduce the FDIC's damages.  Order May, 27, 2016, at 22, EFC No.

10  168.  However, the court's summary judgment order did not preclude reference to these

11  transactions for other purposes.  There is potential merit to defendants' argument that the $5.6

12  million sale-leaseback gain and the $4 million payment from CVB to the Bank is relevant to the

13  jury's determination of whether defendants maintained the Bank's capitalization at an adequate

14  level.  Defendants therefore may introduce the evidence of both transactions for the limited

15  purpose of proving good faith efforts to capitalize the Bank.  Plaintiff may provide a proposed

16  clarifying instruction for the court to read to the jury during trial at the appropriate times.

17         **E.  Plaintiff's Motion in Limine Five (ECF No. 160)**

18                  The FDIC moves to exclude evidence that some defendants purchased additional

19  stock in CVB after the May 5, 2008 dividend.  Specifically, the FDIC argues defendants' alleged

20  purchase of additional CVB stock after approving the 2008 dividend at issue has no bearing on

21  whether the 2008 dividend met the applicable standard of care at the time defendants approved it.

22  Defendants argue if the FDIC can present evidence suggesting defendants engineered the

23  dividend for the primary purpose of cashing out their shares of CVB stock, then defendants

24  should be able to introduce evidence that they purchased CVB stock after the 2008 dividend to

25  show they acted in good faith and in the best interest of the Bank.  Opp'n, ECF No. 173.  At

26  hearing, plaintiff countered that the additional purchase of CVB stock has no potential to support

27  an argument of "good faith" because defendants bought the stock at $3 per share, rather than the

28  earlier $13 per share sales.

4

1    The court GRANTS this motion with clarification.  The court will not allow

2    evidence of the above-mentioned post-2008 CVB stock purchase unless the FDIC opens the door

3    by eliciting evidence that defendants engineered the 2008 dividend for the sole purpose of

4    cashing out their CVB stock.  Even then, the court requires clarification regarding which

5    defendants purchased additional CVB stock, and if there are only a few defendants that did, will

6    consider whether this evidence is more prejudicial than probative, or whether any prejudice can

7    be cured with a limiting instruction.  The parties should be prepared to revisit this motion on the

8    first day of trial.

9        **F.  Plaintiff's Motion in Limine Six (ECF No. 161)**

10    The FDIC moves to exclude a witness and several documents on the grounds of

11    untimely disclosure.  Specifically, the FDIC requests the court exclude: (1) testimony and

12    statements of Denna McGhee, a former financial analyst for Howe Barnes Hoefer & Arnett,

13    because she was not disclosed as a potential trial witness during discovery, even after plaintiff's

14    interrogatories calling for disclosure of each "expert, advisor and/or professional" defendants

15    relied on in connection with the 2008 dividend; (2) a purported resolution of the Bank and CVB's

16    Board of Directors authorizing the 2008 dividend, because it was not produced until November

17    10, 2015; (3) documents related to defendants' claim that they are entitled to offsets based on

18    voluntary relinquishments; (4) two brokerage account statements not produced until April 27,

19    2016; and (5) all other non-impeachment documents defendants intend to use at trial that were not

20    timely produced or disclosed.

21    Disclosure of documents and witnesses is governed by the Federal Rules of Civil

22    Procedure.  Rule 26 requires timely disclosures of the witnesses and documents a party intends to

23    rely on to support its claims or defenses.  Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).  When a party fails to

24    provide the disclosures, that party "is not allowed to use that information or witness to supply

25    evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is

26    harmless."  FRCP 37(c)(1).  The court addresses each of the FDIC's allegations of untimely

27    disclosures below.

28    /////

5

### 1.   Statements and Testimony of Mrs. McGhee

With respect to Mrs. McGhee, defendants argue under Rule 26(e)(1)(A), they did not need to supplement their initial disclosures to include Mrs. McGhee's name because her role as a potential witness only became known to them during later phases of discovery.  Moreover, defendants argue Ms. McGhee's name was included in initial disclosures as an author of emails defendants intended to rely on at trial.

The court is not persuaded by defendants' position.  Defendants are hereby ORDERED to allow the FDIC to depose Mrs. McGhee for up to 3.5 hours prior to the first day of trial, to avoid any unfair prejudice and surprise during trial.  Unless and until this deposition occurs, Mrs. McGhee's testimony and statements are excluded.

### 2.   Resolution

With respect to the resolution purportedly authorizing the dividend, defendants did not produce the resolution until November 10, 2015, two months after the initial close of fact discovery.  Over a year earlier, on September 30, 2014, defendants agreed to produce "all responsive, non-privileged documents in [their] possession, custody or control" in response to the FDIC's request for "all documents related to the tender offer."  Cart Decl. Supp. Pl.'s Mots. in Limine Nos. 1–12, ¶ 10 & Ex. 7, ECF No. 156-1 & ECF No. 156-8.  On August 7, 2015, the FDIC served interrogatories on defendants, specifically calling for all facts related to the resolution authorizing the May 5, 2008 dividend.  Pl.'s Ex Parte Appl., at 2, ECF No. 103.  On September 8, 2015, three days before the original close of fact discovery, defendants responded with only nonsubstantive, general objections.  *Id*. at 2, 4.

On October 2, 2015, the court granted plaintiffs ex-parte request to extend the discovery deadline and set an amended discovery cutoff of November 13, 2015.  Order October 2, 2015, at 6, EFC No. 105.  On October 14, 2015, the FDIC filed a Motion to Compel defendants to produce documents and provide full and complete responses to written discovery.  Pl.'s Mot. to Compel, ECF No. 106.  The court again extended the deadline to complete discovery to November 27, 2015 for the sole purpose of allowing the FDIC to contest defendants' response to their August 7, 2015 discovery requests.  Minute Order October 29, 2015, ECF 112.  The FDIC

1   ultimately withdrew its Motion to Compel after defendants produced the resolution on November

2   10, 2015, three days prior to the first amended discovery deadline.  ECF No. 114.  The FDIC

3   argues defendants' failure to timely produce the resolution document precluded it from seeking

4   deposition testimony from defendants Ricker and Coger and discovery from third parties

5   regarding the creation and authenticity of the resolution.  Pl.'s Mot. in Limine No. 6, ECF No.

6   161, at 6.  Defendants argue the resolution was not "responsive" to any of the FDIC's specific

7   discovery requests, and in any event, was produced prior to the amended November 13, 2015

8   discovery completion date.  Opp'n, ECF No. 174, at 3.  Defendants also allege they produced the

9   resolution as soon as they became aware of its potential use at trial.  *Id.*

10          The court DENIES the motion to exclude the purported resolution document,

11   subject to the FDIC's taking of additional focused discovery prior to trial.  The court finds the

12   FDIC's initial discovery request for "all documents related to the tender offer" quite naturally

13   called for the purported resolution that authorizes the 2008 dividend.  The court further finds

14   defendants unnecessarily prolonged the discovery of the resolution by filing delayed and general

15   objections days before the discovery deadline, in response to the FDIC's interrogatories that

16   specifically called for all facts related to the resolution.  While the FDIC ultimately obtained the

17   resolution with two weeks to spare after a second continuance of the discovery cutoff, the timing

18   was late enough in the game to make the pursuit of additional discovery based on the document

19   itself untenable.  On balance, the court finds the interests of justice will be satisfied by

20   conditioning introduction of the resolution on the focused discovery the FDIC identifies as

21   minimally necessary to probing the resolution's provenance.  Defendants are hereby ORDERED

22   to allow the FDIC to depose defendants Ricker and Coger, as well as Gail Lee, for up to 3.5 hours

23   each prior to the first day of trial.  Unless and until these depositions occur, the resolution is

24   excluded.

25                      **3.  Other Documents Referenced in this Motion**

26          With respect to the additional documents the FDIC moves to exclude, relative to

27   defendants' offset affirmative defense and defendants' purchase of CVB stock after the May 5,

28   2008 dividend, except as explained here the matter is SUBMITTED with an order to issue.

1     As noted, the court has granted plaintiff summary judgment on defendants'

2  "offset" affirmative defenses.  Order May 27, 2016, at 23, EFC No. 168.  Therefore, to the extent

3  any documents are offered to advance a claim of offset, the court excludes them.  To the extent

4  defendants wish to introduce these documents for another purpose, the court notes several

5  apparent discrepancies regarding the timeliness of defendants' production of these documents,

6  which demands a more thorough review of the record, which the court is undertaking.  The court

7  also notes some of these documents are also the subject of the FDIC's Motion in Limine Five,

8  and the court is awaiting additional briefing from the parties on that motion.

9         **G.  Plaintiff's Motion in Limine Seven (ECF No. 162)**

10     The FDIC moves to exclude evidence or argument that defendants acted to

11  replenish the Bank's funds after the $8.8 million dividend when in March and June of 2010 they

12  voluntarily relinquished rights to their Bank benefit plans, certain directors' fees, insurance

13  proceeds, deferred compensation, and vacation time.  Specifically, effective June 29, 2010, the

14  entire Board of Directors signed agreements relinquishing rights to salary continuation, deferred

15  compensation and director retirement benefits.  Coger Decl. Supp. Opp'n to Pl.'s Mot. for Partial

16  Summ. J., ¶ 4 & Ex. C at 18, ECF No. 128-4.  Non-interest income of $6,333,000 was recognized

17  as a result.  *Id*.  The FDIC argues these relinquishments are irrelevant to the decision to approve

18  the dividend two years earlier, and the evidence would mislead and invoke sympathy from the

19  jury.

20     The court GRANTS this motion in part.  Here again, as noted the court granted

21  plaintiff summary judgment on defendants' "offset" and "unjust enrichment" affirmative

22  defenses.  Order May, 27, 2016, at 23, EFC No. 168.  To the extent evidence of benefits

23  relinquishment is offered to advance a claim of offset or unjust enrichment, it is inadmissible.

24  However, defendants now argue their voluntary relinquishment of benefits in 2010 is relevant to

25  show their efforts to maintain the Bank's capitalization and that they acted in good faith two years

26  earlier when approving the dividend at issue.  When acts of subsequent conduct are offered to

27  prove absence of ill intent at an earlier time, a trial court appears to be vested with considerable

28  discretion in admitting such evidence.  *Cf. Kohatsu v. United States*, 351 F.2d 898, 904 (9th Cir.

1    1965) (explaining the admission of subsequent acts of good faith to prove absence of criminal

2    intent during an earlier alleged action does not constitute reversible error unless under all the

3    circumstances of the case it clearly should have been admitted); *see also Bateman v. United*

4    *States*, 212 F.2d 61, 68–69 (9th Cir. 1954) (trial court properly exercised its discretion to exclude

5    evidence of appellants' conduct in 1950 as irrelevant to their state of mind three years earlier

6    during their alleged criminal tax evasion, because by 1950 appellants knew they were being

7    audited and investigated).

8              Here, if plaintiff introduces the narrative that defendants tried to cash out their

9    stock before the Bank failed, defendants may be able to introduce limited evidence of their

10   voluntary relinquishment of benefits two years later in an attempt to disprove that claim.

11   Evidence of conduct in 2010 could be relevant to a jury's determination that in 2008 defendants

12   were not looking to "cash out" quickly, and in fact had the Bank's long term interests in mind.  At

13   this juncture, the court is inclined to believe the jury can determine if defendants had other

14   motives for relinquishing the benefits or whether the relinquishment supports good faith.

15             If the parties have additional authority for the court to consider on the question

16   raised by this motion, they may bring it to the court's attention on the first day of trial.

17             **H.  Plaintiff's Motion in Limine Eight (ECF No. 163)**

18             The FDIC moves to exclude evidence of the negative impact the 2008 dividend

19   and tender offer had on defendants' personal financial condition, or evidence of any financial

20   losses defendants suffered as shareholders of CVB and directors or officers of the Bank as a result

21   of the Bank's failure.  Defendants argue their post dividend financial situation is probative of

22   their motive and mindset when they executed the $8.8 million dividend at issue, and shows that

23   defendants did not stand to benefit from the Bank's losses.

24             The court requires additional information to resolve this motion.  Specifically, the

25   court requires clarification whether there is an appropriate cutoff date after which point evidence

26   of defendants' financial situation should be excluded.  At hearing, the court requested the parties

27   submit a stipulation regarding an appropriate cutoff date, if they can agree on one.

28   /////

9

1    **I.  Plaintiff's Motion in Limine Nine (ECF No. 164)**

2           The FDIC moves to bar defendants from presenting any evidence or argument at

3    trial of former defendant Ellis Matthew's personal bankruptcy.  This motion is GRANTED as

4    unopposed, as the parties have stipulated that any evidence or argument regarding Ellis

5    Matthews' bankruptcy will not be presented at trial.

6    **J.  Plaintiff's Motion in Limine Ten (ECF No. 165)**

7           The FDIC moves to exclude evidence or argument related to the March 26, 2013

8    tax settlement between CVB and the FDIC, which released CVB and its representatives from all

9    claims.  The court has granted plaintiff summary judgment on defendants' "release" affirmative

10   defense.  Order May, 27, 2016, at 13, EFC No. 168.  However, defendants argue the fact that the

11   FDIC gave CVB a full release "for no consideration" is relevant to whether the FDIC views CVB

12   as being "at fault" for the $8.8 million dividend, and should remain admissible for that purpose.

13   Opp'n, ECF No. 178.  Defendants also argue that the release is probative of plaintiff's credibility

14   when it claims the Bank suffered injury as a result of the dividend.  *Id.*

15          At hearing, the court asked the parties whether this evidenced is barred by the

16   settlement privilege provisions of Federal Rule of Evidence 408, and invited supplemental

17   briefing on this issue.  The matter will be submitted upon receipt of this briefing.

18   **K.  Plaintiff's Motion in Limine Eleven (ECF No. 166)**

19          The FDIC moves to exclude testimony of defendant's expert witness Stephen

20   Clinton on the grounds that his opinions are irrelevant, speculative, not properly researched

21   and/or outside the scope of his expertise.  Defendants aver Mr. Clinton is qualified to assert his

22   opinion given his forty years of experience in banking and his reasonable inferences based on

23   documents he reviewed.  Opp'n, ECF No. 179.

24          The court RESERVES ruling on this motion, pending a review of Mr. Clinton's

25   qualifications and the bases for his opinions during voir dire scheduled during breaks in trial,

26   outside the presence of the jury.  Defendants are ORDERED to provide the FDIC with any

27   additional writings from Mr. Clinton that support his testifying as an expert, within seven days

28   from the date of the hearing on motions in limine.

**L.  Plaintiff's Motion in Limine Twelve (ECF No. 167)**

The FDIC moves to exclude any testimony by defendants' expert witness Joe A. Hargett on the following topics: (1) opinion regarding regulatory action taken in 2013 that would have authorized the May 5, 2008 dividend at issue; (2) hypotheticals for different dividend amounts other than the $8.8 million dividend; (3) opinion regarding regulators' attitudes/practices not based on any methodology or expertise; (4) opinion on the Bank's liquidity after May 2008, (5) opinion regarding the market and its impact on bank failures; (6) historical information on the Bank's income, and (7) calculations of net income and retained earnings that are not in dispute.

At hearing, the parties agreed to provide the court with a stipulation clarifying what they agree Mr. Hargett will cover in his testimony.  The court RESERVES ruling on this motion pending receipt of the parties' stipulation.

**III.      DEFENDANTS' MOTIONS IN LIMINE**

**A.  Defendants' Motion in Limine One (ECF No. 150)**

Defendants move to exclude the November 27, 2015 expert report or related testimony of Charles D. Kenny, the FDIC's expert witness, to the extent this report or related testimony concerns legal conclusions and legal standards of care purportedly applicable to defendants' conduct.

The court GRANTS this motion as unopposed based on the parties' agreement Mr. Kenny will not testify in the form of legal conclusions.

**B.  Defendants' Motion in Limine Two (ECF No. 151)**

Defendants move to exclude any evidence of or argument regarding financial harm the May 2008 dividend allegedly caused entities other than the Bank or CVB.  Defendants argue such evidence: (1) is irrelevant because only the Bank and CVB have standing to assert claims based on California Corporations Code § 309, and (2) would result in undue consumption of time, cause unfair prejudice to defendants, and would mislead the jury.  The FDIC argues it has statutory standing under 12 U.S.C. § 1821(k) to "bring civil actions for money damages against the Bank's directors" as the "successor" under 12 U.S.C. § 1821(d)(2)(A) to "the rights of the Bank and stockholders and depositors."  The FDIC explains it is not bringing this case "on behalf

1   of the Bank and the Bank's shareholder," but directly on its own behalf as receiver, and on behalf

2   of the constituents harmed by defendants' alleged misconduct, under the authority granted in

3   § 1821(k).

4          The court DENIES this motion.  In prior orders, this court has ruled the FDIC has

5   standing to pursue its claims under both California Corporations Code § 309 and 12 U.S.C.

6   § 1821(k).  Order July 27, 2015 at 8 & 10, ECF No. 86.  Evidence of harm suffered by entities

7   other than the Bank or CVB as a result of defendants' approval of the 2008 dividend may be

8   relevant to show the extent of defendants' alleged negligence in approving the dividend at issue,

9   and to contextualize the FDIC's role in addressing the Bank's failure and bringing the claims in

10   this case.

11       **C.  Defendants' Motion in Limine Three (ECF No. 152)**

12          Defendants move to bar evidence or argument related to dividends occurring after

13   the May 5, 2008 dividend at issue, if offered to support new, separate and independent claims for

14   relief with their own facts and legal theories.  The FDIC does not oppose this motion, but

15   emphasizes such evidence may later become relevant to establish damages that logically extend

16   from defendants' approval of the May 5, 2008 dividend.  Opp'n, ECF No. 183.

17          The court GRANTS this motion as unopposed.

18       **D.  Defendants' Motion in Limine Four (ECF No. 153)**

19          Defendants move to exclude evidence or argument pertaining to how the FDIC

20   might distribute any potential recovery of monetary relief on the grounds that this evidence could

21   lead the jury to wrongfully conclude the FDIC has already persuaded the court it is likely to

22   prevail and obtain such recovery.

23          The court DENIES this motion.  Defendants' concern will be addressed through

24   the provision of jury instruction clarifying the distribution priorities, including as outlined in 12

25   U.S.C. § 1821(d)(11)(A).

26   /////

27   /////

28   /////

1    **E.  Defendants' Motion in Limine Five (ECF No. 154)**

2              Defendants move to exclude evidence of transcripts of administrative depositions

3    of Gary Findley, Murray Bodine, and Peter Buck at which defendants were neither present nor

4    represented by counsel, and argue these transcripts contain inadmissible hearsay.  At hearing, the

5    FDIC clarified it only intends to introduce deposition statements of Mr. Findley and Mr. Buck,

6    but not Mr. Bodine.

7              The court DENIES this motion, but with the clarification that upon receipt of the

8    parties' designations and counter-designations, and any objections thereto, the court will rule on

9    what portions of the deposition testimony will be presented to the jury.

10   **F.  Defendants' Motion in Limine Six (ECF No. 155)**

11             Defendants move to exclude expert opinion testimony of six of the FDIC's

12   witnesses, and argue these witnesses were never disclosed or designated as experts and their

13   opinion testimony does not qualify as lay opinion.

14             The court DENIES this motion, but with the clarification here as well that upon

15   receipt of the parties' designations and counter-designations, and any objections thereto, the court

16   will rule on what portions of the deposition testimony will be presented to the jury.

17   **IV.    CONCLUSION**

18             The parties' motions in limine are resolved to the extent set forth above.  This

19   order specifically resolves ECF Nos. 150, 151, 152, 153, 154, 155, 156, 157, 159, 160, 162 and

20   164.

21             SO ORDERED.

22   DATED:  October 13, 2016.

23

24                                              _____
                                                UNITED STATES DISTRICT JUDGE
25

26

27

28