UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR BUTTE COMMUNITY BANK, | No. 2:13-cv-01710-KJM-EFB |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| ROBERT CHING, et al., | |
| Defendants. | |

On November 17, 2016, the jury found all defendants liable for negligence and a breach of the fiduciary duty of care in connection with an $8,800,000 dividend they caused Butte Community Bank (Bank) to issue. Jury Verdict, ECF No. 270. The Federal Deposit Insurance Corporation (FDIC), as receiver for the Bank, is the plaintiff. Defendants are former members of the Bank's board of directors: Robert Ching, Eugene Even, Donald Leforce, Luther McLaughlin, Robert Morgan, James Rickards, Gary Strauss, Hubert Townshend, John Coger and Keith Robbins.[1] Defendants' post-trial motion for judgment notwithstanding the verdict is before the court. Mot., ECF No. 299. FDIC opposes, Opp'n, ECF No. 302, and defendants have filed a

---

[1] Former defendant Ellis Mathews declared personal bankruptcy in June, 2015, *see* ECF No. 85, and was formerly dismissed from this case a year later, ECF Nos. 140, 145.

1

reply, Reply, ECF No. 303. On August 21, 2017, the court submitted the motion. ECF No. 304. As explained below, the motion is DENIED.

I. BACKGROUND

This order provides only brief background for context. The court has reviewed the facts and procedural history of this case at length in its prior orders. *See, e.g.*, Order May 27, 2016, ECF No. 168; Order July 27, 2015, ECF No. 86; Order July 8, 2014, ECF No. 39. It also presided over trial and is familiar with the record made there. *See* H'rg Mins, ECF Nos. 226, 228, 231, 234, 238-39, 243, 245-46, 260, 262, 264-65.

The Bank was a wholly owned subsidiary of California Valley Bancorp (CVB), a registered financial holding company. CVB was also the Bank's sole shareholder. Defendants occupied three roles: They were on both the Bank's and CVB's board of directors and they were CVB shareholders. While occupying these three roles, defendants decided to pursue a large one-time "tender offer" that involved the Bank's selling and immediately leasing back seven Bank buildings, with the cash generated then being transferred to CVB as a dividend, and CVB's distributing the cash to stockholders. The Bank issued the $13 million tender offer in March 2008. On May 5, 2008, the Bank paid CVB an $8.8 million dividend (the "Dividend"), and CVB then paid out a total of $13 million to participating stockholders, approximately $3.4 million of which went directly to the defendants, with each defendant personally receiving sums varying from $0 to $600,000. After this transaction, the Bank suffered financially: It applied for federal asset relief in June 2008 then failed in August 2010. The FDIC was named as the receiver on August 20, 2010.

On the Bank's behalf, FDIC sued defendants in 2013, alleging their decision to approve the Dividend amounted to negligence, gross negligence and a breach of their fiduciary duties. *See generally* Compl., ECF No. 1. After the close of evidence at trial, defendants moved for judgment as a matter of law under federal civil Rule 50(a), ECF No. 261, which the court denied from the bench, ECF No. 262. Two days later, the jury found all named defendants liable on the FDIC's negligence claim and the FDIC's breach of fiduciary duty of care claim, but not on the FDIC's gross negligence claim. ECF No. 270. The Jury awarded damages in the amount of

2

$2.64 million. *Id.*[2] Judgment was entered against defendants consistent with the verdict. ECF No. 297. Defendants now renew their motion for judgment as provided by the Federal Rules.

II. LEGAL STANDARD

A party may renew its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) when, as here, the court denies the Rule 50(a) motion and the jury returns a verdict against the movant. *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "[A] proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *Id.*.

A court can grant a Rule 50(b) motion and overturn the jury's verdict only if "'there is no legally sufficient basis for a reasonable jury to find for that party on that issue.'" *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000)). "[T]he test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006) (citing *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). In administering this test, the court not only draws all reasonable inferences in favor of the nonmoving party, but also "disregard[s] all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 135 (citation omitted). The court may not make credibility determinations, may not weigh the evidence and may not substitute its view of the evidence for that of the jury. *See id.* at 150-51; *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1084 (9th Cir. 2009) ("In finding the jury's decision mistaken and ungrounded, the district court took its own view of the medical evidence in place of the jury's— an impermissible practice.") (citations omitted).

In addition to these stringent standards, Local Rule 291.1 also requires Rule 50(b) movants to highlight the "particular errors of law claimed," the "particulars" of any argument that

---

[2] The jury awarded $2.64 million in connection with the negligence claim and $880,000 in connection with the fiduciary breach claim. ECF No. 270 at 2, 4. Finding the awards duplicative, the court entered a total judgment award of $2.64 million, plus interest. Order, ECF No. 296.

3

the evidence is insufficient, and mandates "specific reference [to] relevant portions of any existing record and [] supporting affidavits[.]" L.R. 291.1 (E.D. Cal.).

III. ANALYSIS

Defendants raise five reasons the court should disregard the jury's verdict and grant judgment in defendants' favor. As explained below, defendants have not met their stringent burden to show that "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs*, 443 F.3d at 1062.

A. Statute of Limitations and Adverse Domination

Defendants first argue the court erred in instructing the jury about the applicable statute of limitations for FDIC's negligence claim. Mot. at 4-5; *see* Instruction No. 31, ECF No. 263 at 32. They contend a two-year statute of limitations traditionally attached to negligence claims should have applied, not the four-year limitations period applicable to fiduciary-duty claims. Mot. at 4. They further challenge the court's instruction that the statute of limitations is available as a defense only if a defendant can "prove that he was not acting as a fiduciary when he committed any negligence[.]" *Id.*; *see* Instruction No. 31. Finally, defendants argue the same instruction erroneously provided that the adverse domination theory could potentially toll the limitations period. Mot. at 4. In opposition, FDIC contends defendants did not properly preserve this argument. Opp'n at 7-8 (citing Rule 51(d)(1)(A)).

The court finds defendants properly preserved this argument. Defendants need only have objected to the instructions on the record after receiving the court's proposed instructions. Fed. R. Civ. P. 51 (c). They did so here. On November 15, 2016, a day after the court discussed with the parties the proposed instructions, *see* Nov. 15, 2016 H'rg Mins, ECF No. 262, defendants filed their pre-verdict Rule 50(a) motion for judgment in which they raised both arguments renewed here: That the two-year statute of limitations should apply and that the adverse domination theory should not. ECF No. 261 at 7-9. Defendants defended their position on the record. ECF No. 262. The arguments are preserved.

On the merits, the court's jury instruction and the jury's conclusion that the negligence claim was timely are both supported by the law and by the record. A jury reasonably

4

1 | could have found for the FDIC on its negligence claim based on defendants' breach of their
2 | fiduciary duty. The Ninth Circuit clarified some time ago, in *FDIC v. McSweeney*, 976 F.2d 532
3 | (9th Cir. 1992), that when, as here, former bank directors and officers face a negligence claim for
4 | breaching their fiduciary duties, the claim enjoys the same four-year limitation period as fiduciary
5 | duty claims, not the two-year period for negligence claims. *Id.* at 534 n.1; *see also F.D.I.C. v.*
6 | *Van Dellen*, No. CV 10-4915 DSF SHX, 2012 WL 4815159, at *8 (C.D. Cal. Oct. 5, 2012)
7 | (under *McSweeney*, "gravamen" of FDIC's claims for "both breach of fiduciary duty and
8 | negligence" was "breach of fiduciary duty, not professional or other negligence," for purposes of
9 | statute of limitations). The court is aware of no intervening authority to the contrary, and the
10 | parties identify none.

11 | Here, the jury reasonably could have found implicitly that the gravamen of FDIC's
12 | negligence claim was a breach of defendants' fiduciary duties. *See* Instruction No. 31 (instructing
13 | statute of limitations defense applies only to negligence, not to fiduciary breaches). The FDIC
14 | presented ample evidence that the directors depleted the Bank's capital reserves, did not properly
15 | inform themselves of the risks associated with the Dividend before approving it, and did not
16 | follow prudent policies and procedures in considering the Dividend. *See, e.g.*, ECF No. 257 at
17 | 14-16, 38-39 (Keith Robbins trial testimony explaining defendants did not review or rely on
18 | outside counsel advice before approving Dividend); ECF No. 256 at 56-57 (Gary Findley trial
19 | testimony that attorney Gary Findlay never advised the Board to approve the Dividend); ECF No.
20 | 252 at 96, 104-05 (John Coger trial testimony indicating Board improperly approved the
21 | Dividend and misled federal regulators about its approval). The actions described more than once
22 | during trial by witnesses with requisite knowledge are emblematic of fiduciary breaches. *Cf.*
23 | *Prof'l Hockey Corp. v. World Hockey Ass'n*, 143 Cal. App. 3d 410, 414 (1983) (a director's
24 | fiduciary duties include duties of obedience, diligence, and loyalty in the management of
25 | corporate affairs and obligations of trust and confidence to the corporation and its stockholders).

26 | There was sufficient evidence for the jury to conclude the four-year statute of
27 | limitations applied to the negligence claim here. Considering the claim derives primarily from
28 | the May 2008 Dividend, the claim indisputably accrued within the four-year period preceding the

bank's closure on August 20, 2010. The court need not reach the parties' tolling arguments with respect to the adverse domination theory. *See* Mot. at 4-5. The court therefore finds no basis to challenge the jury instruction nor a sufficient basis to reject what the jury must have found, that the FDIC's negligence claim was timely.

### B. Causation and Damages

Defendants next argue that even if no claim is time barred and even if defendants negligently approved the Dividend, they are entitled to judgment because the evidence does not show the defendants actually caused the FDIC any damages. *Id.* at 5-7. Specifically, defendants argue there can be no damages to the Bank given that the full $8.8 million in alleged damages caused by the Dividend was received by the Bank's sole shareholder, CVB; they argue causation is too attenuated to attribute damages to any subsequent dividend distributions, meaning those made after the May 5, 2008 Dividend; and they argue FDIC cannot recover for any harm unidentified third-party creditors or depositors might have suffered. *Id.*

To support their position, defendants reference, without any citation to the record, defense expert Joe Hargett's opinion that the Bank was well-capitalized after the Dividend was approved and that the Bank suffered only a slight, temporary dip in finances. *Id.* at 6. They also cite defendant John Coger's testimony to argue "no one lost money and the Bank did not have to pay any penalty" as a result of the post-Dividend dip in capital. *Id.* at 6 (citing ECF No. 228 at 39). Defendants also contend a weakened post-Dividend financial state does not prove the dividend caused any "damage" because "every dividend leaves a corporation with less capital[.]" Reply at 5; Mot. at 6. Last, defendants contend there is insufficient evidence to find the Dividend caused the Bank's demise, as the Bank remained in business for another two-and-a-half years. Mot. at 6.

Although defendants have selected and selectively interpreted portions of the record in their favor, defendants have not met their burden to show no reasonable juror could reach the conclusion embodied in the verdict. *Pavao*, 307 F.3d at 918 (a jury verdict supported by substantial evidence must be upheld "even if it is also possible to draw a contrary conclusion."). The jury could reasonably have discredited the contrary evidence defendants

selectively cite. *See Reeves*, 530 U.S. at 135 (court must "disregard all evidence favorable to the moving party that the jury is not required to believe.") (citation omitted).

As plaintiffs point out, the jury had broad discretion to calculate damages. Opp'n at 9. The jury was told that FDIC may recover any loss so as to reasonably and fairly compensate FDIC for injuries defendants caused and that defendants' actions need only have been "a substantial factor in causing the harm"; defendants' actions need not have been "the only cause of the harm." ECF No. 263 at 30, 33 (Final Jury Instruction Nos. 29, 32). Defendants do not challenge the wording of either instruction.

Guided by this instruction, the jury was well within reason to reach its chosen damages award. The jury heard testimony that the Dividend diminished the Bank's capital, the Dividend caused the bank to lose its status as a well-capitalized bank, the Dividend caused the Bank to violate its own policies, and the Dividend contributed to the Bank'*s* demise. *See* ECF No. 253 at 76 (Robert Ching trial testimony admitting Dividend strained Bank's capital and contributed to bank's demise); ECF No. 250 at 83-87 (John Coger trial testimony admitting the same); *see also* Tr. Ex. 176 (showing receivership deficit of nearly $13 million). The jury could reasonably have found the Dividend set in motion the chain of preventable harm connected to the FDIC's loss. At trial, defendant Coger admitted the Dividend was aimed at advancing the Bank's tender offer. ECF No. 250 at 6 ("Q. Now, on May 5th, 2008, the Bank sent $8.8 million from the Bank to the holding company to support the tender offer, right? A. Yes."). And approving that Dividend caused CVB to immediately lose $8.8 million in capital on-hand, which in turn impeded the Bank's ability to meet its creditor obligations and drove the $2.1 million in future dividend payments. *See id.* at 83-87 ("Q. And so this [dividend purchase] started the process of getting the tender offer completed and ended up resulting in the bank holding company's checking account being reduced to $19,737.09, right? A. Correct." "Q. In order to pay future dividends . . . you needed to get money from the bank, right? A. Yes."). This chain of events reasonably could lead to the $2.64 million in damages awarded by the jury against defendants. Causation is not so attenuated, or attenuated at all, as to render the verdict unsupportable.

Considering sufficient evidence supports the jury's damages findings and ultimate award, defendants have not met their stringent burden to overturn the jury's damages verdict.

C. <u>Business Judgment Rule</u>

Defendants also contend they are entitled to judgment as a matter of law because their business decisions were shielded by the business judgment rule. Mot. at 7-8.

Not so. The court properly instructed the jury that the business judgment rule was an available defense against liability in certain circumstances. ECF No. 263 at 31 (Jury Instruction No. 30); *F.D.I.C. v. Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999) ("California's business judgment rule . . . requires directors to perform their duties in good faith and as an ordinarily prudent person in a like circumstance would. It immunizes directors from liability if they can establish that they acted in accordance with this standard of care."). Defendants do not challenge the instruction's wording, which stated that to trigger the defense a "defendant must show he acted in good faith, made a reasonable inquiry when the need therefore was indicated by the circumstances, and did not have information that would have made reliance unwarranted." ECF No. 263 at 31. After being so instructed, it was up to the jury to decide if each defendant met his burden to trigger the rule's protection. The jury, which is presumed to follow the court's instructions, *Kansas v. Marsh*, 548 U.S. 163, 179 (2006), found each defendant liable.

Defendants have identified no valid basis for overturning the jury's decision. Defendants point to no portion of the record to show they acted indisputably in good faith, no evidence that they made a reasonable inquiry, and no evidence that they reasonably deemed the Dividend approval an appropriate decision. Mot. at 7-8. Even if they had provided specific record citations, they would still need to show no reasonable jury could have found the fact-intensive and credibility-laden business judgment defense inapplicable. *FDIC v. Hawker*, No. CV F 12–0127 LJO DLB, 2012 WL 2068773, *9 (E.D. Cal. June 7, 2012) (emphasizing business judgment rule is a fact-intensive affirmative defense); *see also F.D.I.C. v. Baldini*, 983 F. Supp. 2d 772, 783 (S.D. W. Va. 2013) (collecting cases and finding "there is overwhelming authority to support the FDIC's position that the business judgment rule is highly fact dependent[.]").

Defendants' failure to comply with Local Rule 291.1's requirement of "specific reference[s] to relevant portions of any existing record" nails the coffin on this aspect of their motion.

### D. Creditor Standing

Defendants also appear to argue they are entitled to judgment as to any damages suffered by the Bank's creditors and depositors because the FDIC has no standing to raise such claims. Mot. at 8-10. Here again, defendants cite no portions of the record, no supporting affidavits, no specific claim for the court to analyze against the trial evidence, and they reference no argument or instruction as improperly presented to the jury. *Id.*

The court previously rejected a similar argument in denying defendants' second motion *in limine*. Order, ECF No. 202 at 11. As receiver for the Bank, FDIC succeeds not only to "all rights, titles, powers, and privileges of [the Bank]," but also to all rights, titles, powers, and privileges of any "stockholder, member, accountholder, depositor, officer, or director of [the Bank] with respect to the [Bank] and the assets of the [Bank]." 12 U.S.C. § 1821(d)(2)(A)(i). Here, the FDIC succeeded to the Banks' rights and interests on August 20, 2010. ECF No. 251 at 13 (Coger testimony from Trial Day 3). Its standing to bring claims on the Bank's behalf includes claims based on harm suffered by the Bank's constituents. 12 U.S.C. § 1821(k) (granting FDIC standing to bring civil actions for money damages against the Bank's directors as the successor); *id.* § 1821(d)(2)(A) (designating FDCI as successor in interest of the rights and assets of the Bank and stockholders and depositors).

To recover at trial, the FDIC was required to prove defendants' misconduct injured the Bank and reduced the receivership assets otherwise available to distribute to the Bank's claimants. The FDIC presented significant evidence in seeking to meet its burden. *See, e.g.*, Tr. Ex. 176 (showing receivership deficit of nearly $13 million); ECF No. 251 at 18-19 (Wayne Green trial testimony affirming $13 million deficit and explaining consequences of Bank's asset deficiencies). The FDIC was not required to prove any pre-receivership Bank depositor or creditor could have sued defendants independently. Instead, Congress mandates that the FDIC distribute recovered funds to the Bank's constituents, including depositors and creditors, through a predetermined priority scheme. 12 U.S.C. § 1821(d)(11)(A)(i)-(v).

The court also has previously rejected defendants' claim that California Corporations Code section 309 prohibits recovery for harm suffered by the Bank's creditors and depositors. *See* Order Oct. 14, 2016, ECF No. 202, at 11-12 (rejecting argument); Order July 27, 2015, ECF No. 86 at 8-10 (same). The FDIC brought its claims under both section 309 and 12 U.S.C. § 1821(k). Section 309 provides in pertinent part:

> A director shall perform the duties of a director . . . in good faith, in a manner such director believes to be in the best interest of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.

Cal. Corp. Code § 309(a). It sets the standard of care against which to analyze defendants' actions, but it does not and indeed cannot limit the interests Congress specifically charged FDIC with representing under federal law. *See* 12 U.S.C. § 1821(d)(2)(A)(i).

Sufficient evidence supports a finding that defendants' approval of the Dividend diminished assets available to the FDIC upon the Bank's closure, which in turn harmed the Bank's unsecured creditors and depositors. Defendants' mere argument that the FDIC cannot recover for damages suffered by third-party creditors and depositors does not warrant overturning the jury's verdict.

### E. Dividend Statutes

Finally, defendants argue the "Dividend Statutes" insulate them from liability for approving the Dividend. The court has thrice rejected this argument. July 8, 2014 Order, ECF No. 40 at 6-7 (granting in part and denying in part defense summary judgment motion); July 27, 2015 Order, ECF No. 86 at 12 (denying summary judgment; finding "a director may be negligent and therefore liable under section 309, even if she complied with the specific statutes defining impermissible dividends and therefore is not liable under section 316."); Dec. 1, 2015 Order, ECF No. 117 (denying defendants' reconsideration request). Defendants cite no new evidence, raise no new argument and offer no persuasive rationale for the court to modify its prior position on the law, or at this stage to find the jury's verdict in error. *See* Mot. at 11 ("incorporating [] by

reference" all arguments from their second summary judgment motion and motion for reconsideration papers[.]").

IV. <u>CONCLUSION</u>

Defendants have not met their stringent burden to show the jury's verdict should be overturned. The court DENIES the motion for judgment as a matter of law.

This order resolves ECF No. 299.

IT IS SO ORDERED.

DATED: January 26, 2018.

_____
UNITED STATES DISTRICT JUDGE